# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MAKE LIBERTY WIN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 20-cv-04128-SRB |
| ELIZABETH L. ZIEGLER, in her official capacity as Executive Director of the Missouri Ethics Commission, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff Make Liberty Win ("Make Liberty Win"), Make Liberty Win-Federal Committee ("Make Liberty Win-Federal"), and Great America PAC's ("Great America") (collectively, "Plaintiffs") Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. #2.) On August 12, 2020, the Court presided over a hearing on the pending motion. Plaintiffs called Justin Greiss, the Executive Director of Make Liberty Win, and Eric Beach, the co-chairman of Great America, as witnesses. Plaintiffs also introduced exhibits in support of their motion. Upon consideration of the entire record, Plaintiffs' motion for a preliminary injunction is GRANTED.

### I. BACKGROUND

Make Liberty Win is a federal political action committee ("PAC"). Its principal place of business is in Alexandria, Virginia. In late June 2020, Make Liberty Win decided to express its political views by making expenditures in connection with the August 4, 2020, primary elections for the Missouri House of Representatives and the Missouri Senate (the "August primary"). (Testimony of Greiss.)

On June 30, 2020, Make Liberty Win filed a Statement of Organization with the Missouri Ethics Commission (the "Commission") to establish a Missouri state continuing committee and PAC known as Make Liberty Win-Federal. Make Liberty Win formed Make Liberty Win-Federal because "Missouri law requires committees domiciled outside of Missouri and out-of-state committees that wish to make more than $1,500 in expenditures concerning Missouri elections to register as Missouri continuing committees and state PACs." (Doc. #3, pp. 5-6.)[1] Under Missouri law, a "continuing committee" is "a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters[.]" Mo. Const. art. VIII, § 23, cl. 7(6)(c). A PAC is one type of continuing committee. Mo. Const. art. VIII, § 23, cl. 7(20).

Great America is also a federal PAC. Great America's principal place of business is in Alexandria, Virginia. In mid-July 2020, Great America decided that it also wanted to make expenditures in support of candidates running in the August primary. (Testimony of Beach.) In order to spend more than $1,500 in the August primary, Great America was required to form a Missouri continuing committee. 1 C.S.R. § 50-5.020(2).

Plaintiffs allege that their desired expenditures were prohibited by 60-day waiting periods under Missouri law. This case turns on the constitutionality of those provisions. The Missouri Constitution provides that a continuing committee "shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures[.]" Mo. Const. art. 8, § 23, cl. 7(6)(c). This deadline is also found in Missouri Revised Statute

---

[1] All page numbers cited herein refer to the pagination automatically generated by CM/ECF.

§ 130.011(10). A state PAC similarly "shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures." Mo. Const. art. VIII, § 23, cl. 7(20). Finally, Missouri regulations require a non-domiciliary committee or out-of-state committee to establish a continuing committee or state PAC "no later than sixty (60) days prior to the election for which the committee receives contributions or make expenditures, and prior to making a contribution or expenditure in the State of Missouri." 1 C.S.R. 50-5.020(4)(C).[2] These 60-day periods will collectively be referred to as the "formation deadline."

Contributions or expenditures in violation of the formation deadline is an "infraction," and a purposeful violation is a misdemeanor. Mo. Rev. Stat. § 130.081.1-2. Civil penalties and fines may also be levied. Mo. Const. art. VIII, § 23, cl. 5; Mo. Rev. Stat. §§ 130.072, 105.961.4(6). Plaintiffs allege that entities accused of violating the formation deadline may also be subjected to "public reprobation." (Doc. #1, ¶ 49.) Mr. Greiss and Mr. Beach testified that allegations of non-compliance also hinders their ability to raise donations. The statute of limitations for any violation of Mo. Const. art. VIII, § 23 is three years. Mo. Const. art. VIII, § 23, cl. 6(2).

Because of the formation deadline, Make Liberty Win and Make Liberty Win-Federal delayed their political activities in the August primary for several days. However, they eventually decided to make contributions and expenditures in the August primary and complied with all other requirements.[3] Make Liberty Win and Make Liberty Win-Federal now face, and

---

[2] Plaintiffs acknowledge that portions of their pleadings mistakenly cite this regulation as 1 C.S.R. 50-5.020(4)(A)-(B). (Doc. #22, p. 9.) In addition, Defendants contend that "[t]he challenged regulation . . . would apply only to Plaintiffs Great America PAC and Make Liberty Win because they are domiciled outside the state of Missouri." (Doc. #20, p. 11.) Because all Plaintiffs assert a claim under 1 C.S.R. 50-5.020(4)(C), and for purposes of this Order, the Court assumes without deciding that each Plaintiff is subject to it.

[3] Make Liberty Win contributed $275,000 to Make Liberty Win-Federal, and those funds were used for canvassing and literature in support of specific candidates running for Missouri offices.

will continue to face, criminal prosecution and financial sanctions until the applicable statute of limitation expires. Great America decided not to make expenditures in the August primary. Plaintiffs allege—and Mr. Greiss and Mr. Beach both testified—that the formation deadline chilled their First Amendment rights in the August primary, and will impair their First Amendment rights in future elections.

On July 22, 2020, Plaintiffs filed this lawsuit against Defendants. Defendants are individuals sued in their official capacity as Executive Director, Chair, Vice-Chair, and Commissioners of the Commission. The Verified Complaint asserts the following claims "by All Plaintiffs Against All Defendants:" First and Fourteenth Amendment Facial and As-Applied Challenge Under 42 U.S.C. § 1983 to the Continuing Committee Deadline (Counts I, II); First and Fourteenth Amendment Facial and As-Applied Challenge Under § 1983 to the PAC deadline (Counts III, IV); and First and Fourteenth Amendment Facial and As-Applied Challenge Under § 1983 to the Non-Domiciliary/Out-of-State Committee Registration Deadline (Counts V, VI). (Doc. #1, ¶¶ 80-141.)

On July 22, 2020, Plaintiffs also filed the pending Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. #2.) Plaintiffs seek an order enjoining enforcement of the formation deadline so that they can engage in political expression without fear of civil fines or other punishment. Upon a review of the entire record, including the evidence and arguments presented at the hearing, the Court grants Plaintiffs' request for a preliminary injunction as set forth below.

## II. APPLICABLE LAW

Under Federal Rule of Civil Procedure 65, the Court may issue a preliminary injunction. Fed. R. Civ. P. 65(a). To determine the propriety of injunctive relief, the Court must consider four factors:

(1) the movant's likelihood of success on the merits;

(2) the threat of irreparable harm to the movant;

(3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and

(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).[4] All four factors must be examined "to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations and quotations omitted). However, "the likelihood of success on the merits is most significant." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (citations and quotations omitted).

**III. DISCUSSION**

**1. Plaintiffs Have Shown a Likelihood of Success on the Merits.**

Under 42 U.S.C. § 1983, a state actor may be sued for violating an individual's constitutional rights. *See* 42 U.S.C. § 1983. Here, Plaintiffs assert § 1983 claims and allege that the formation deadline violates their First Amendment rights to freedom of speech and association. Upon review of the record and applicable case law, the Court finds that Plaintiffs have shown a likelihood of success on their claims.

The First Amendment, applicable to states through the Fourteenth Amendment, "protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *Republican Party of Minn. v. White*, 416 F.3d 738, 748 (8th Cir. 2005). This protection includes

---

[4] A primary difference between a TRO and a preliminary injunction is that a TRO may be issued without notice to the adverse party. *See* Fed. R. Civ. P. 65(a), (b). In an Order dated July 24, 2020, the Court declined to enter a TRO absent notice to Defendants. (Doc. #12.) Defendants were subsequently served and received notice of all proceedings herein. Therefore, the Court construes the pending motion as seeking a preliminary injunction.

the "right to participate in democracy through political contributions." *McCutcheon v. Fed. Elec. Comm'n*, 572 U.S. 185, 191 (2014). "Independent expenditures are indisputably political speech, and any restrictions on those expenditures strike at the core of our electoral process and of the First Amendment freedoms." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (citations and quotations omitted). "Laws that burden political speech are subject to strict scrutiny[.]" *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 340 (2010) (quotations omitted). To withstand strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* (citations and quotations omitted).

In *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944 (8th Cir. 2018), the Eighth Circuit struck down a similar formation deadline under Missouri law. The statute in *Klahr* provided that "campaign committees . . . formed by an individual or group of individuals to receive contributions or make expenditures . . . to support or oppose . . . one or more particular ballot measures in an election . . . shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures[.]" *Id.* at 947 (quoting Mo. Rev. Stat. § 130.011(8)).

*Klahr* found that this 30-day formation deadline burdened and restricted speech. *Id.* at 950. "[T]he formation deadline *prohibits* formation—the precondition to speak—within 30 days of the election. Thus, the formation deadline . . . prohibits speech even if the individual or group is willing to register, report information, keep necessary records, and take organizational steps." *Id.* *Klahr* further recognized that Missouri law imposed "a significant burden," including fees, for the exercise of First Amendment rights in violation of the 30-day deadline. *Id.* at 951.

6

Applying strict scrutiny, *Klahr* then held that the 30-day formation deadline was "unconstitutional because it is not narrowly tailored." *Id.* at 952.[5] The Eighth Circuit explained that:

> The formation deadline indiscriminately prohibits (or significantly burdens) speech by individuals or groups who did not form a campaign committee by the 30-day deadline. This would be less burdensome if all individuals and groups knew well in advance that they would eventually want to speak. But as the Supreme Court has recognized, this is not the case: '[T]he public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence. The need or relevance of the speech will often first be apparent at this stage in the campaign. The decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others.'

*Id.* at 952 (quoting *Citizens United*, 558 U.S. at 334). These time-sensitive concerns were particularly relevant because "[i]n Missouri, individuals may not learn of ballot measures until days before the election." *Id.* *Klahr* concluded that "[d]ue to its burden on speech and its modest effect on preventing circumvention of the disclosure regime, the formation deadline is not narrowly tailored." *Id.* at 953.

Here, the Court finds that the formation deadline in this case is materially indistinguishable from the statute struck down in *Klahr*. Indeed, the 60-day deadline in this case is even more burdensome than the 30-day deadline in *Klahr*. Under these circumstances, and based on *Klahr*, the Court finds that Plaintiffs have shown a likelihood of success on their claims.

Defendants argue that *Klahr* is not dispositive of the issues presented herein. They contend that *Klahr* is distinguishable because it decided a different Missouri statute governing "campaign committees," which are "an entirely different type of political committee." (Doc. #20, p. 16.) Among other things, Defendants also argue that the formation deadline is

---

[5] The Eighth Circuit assumed without deciding that the Commission presented a compelling interest. *Id.* at 952.

constitutional because it helps decrease "the possibility of late-forming PACS improperly coordinating with candidates," because it promotes transparency, and because it protects against corruption. (Doc. #20, p. 18.) As explained below, the Court rejects these arguments.

First, there is no indication that *Klahr* would have been decided differently depending on the type of political committee. Indeed, *Klahr* noted that "'[c]ontinuing committees' may also support or oppose ballot measures . . . [b]ut . . . are not an adequate alternative, because they must be formed *60 days* before the election." *Klahr*, 892 F.3d at 948 n.3 (citing Mo. Rev. Stat. § 130.011(10)) (emphasis in original).

Second, and as explained by Plaintiffs, "[c]ontributions to, and independent expenditures by, committees such as Plaintiffs do not pose materially greater risks of corruption than the campaign committees in *Klahr*." (Doc. #22, pp. 7-9.) On this point, Plaintiffs contend that—other than the formation deadline—they have and will comply with all other provisions of Missouri law, including disclosure requirements. (Testimony of Greiss.) With respect to transparency and voter education, Plaintiffs further state that Make Liberty Win-Federal "has already filed all legally required disclosure reports with the Commission concerning its contributions and expenditures. Any voter that wishes to learn anything about the committee is free to review its Statement of Organization and disclosure report. No valid state interest is furthered by silencing it." (Doc. #3, p. 16) (citation omitted).

Third, Defendants argue that "*Klahr* considered only a Missouri statute, whereas Plaintiffs' challenge here includes two constitutional provisions" that "Missouri voters overwhelmingly approved[.]" (Doc. #20, p. 18.) But the judicial branch must determine whether a law is constitutional regardless of how it was enacted. As stated by the Supreme Court, "[i]t is irrelevant that the voters rather than a legislative body enacted [the law], because

8

the voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation." *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 295 (1981). At this stage of litigation, Defendants' attempt to distinguish *Klahr* is rejected.

For these reasons, Plaintiffs have shown a likelihood of success on the merits.

## 2. Plaintiffs Have Shown Irreparable Harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (citations and quotations omitted). Here, the formation deadline caused Make Liberty Win and Make Liberty Win-Federal to delay their political speech in the August primary. (Testimony of Greiss.) Great America decided against engaging in the August primary. (Testimony of Beach.) Although the August primary has already occurred, Plaintiffs contend there is a reasonable likelihood that they will decide within 60 days of a future election that they wish to accept contributions and make expenditures in support of that election. (Testimony of Greiss and Beach.) Finally, Plaintiffs allege that even if this case becomes moot while it is pending, the constitutional violations "are capable of repetition, yet evading review." (Doc. #1, ¶¶ 69, 76.) Under the facts presented here, the formation deadline has and likely will cause irreparable harm to Plaintiffs.

Defendants' arguments to the contrary are not persuasive.[6] Defendants contend that Make Liberty Win and Make Liberty Win-Federal did not suffer irreparable harm in the August primary because they ultimately made expenditures despite the formation deadline. However, it appears that Make Liberty Win and Make Liberty Win-Federal were deprived of their

---

[6] Defendants argue that they—not Plaintiffs—will suffer irreparable harm if the formation deadline cannot be enforced. However, a governmental entity "has no legitimate interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

9

constitutional rights for several days before deciding to engage in those activities. Moreover, *Klahr* recognized that "[t]he fact that some may choose to speak despite the formation deadline does not make it any less burdensome." *Klahr*, 892 F.3d at 951 (citations, quotations, and alterations omitted).

Defendants also argue that Plaintiffs' delay in filing this lawsuit weighs against a finding of irreparable harm. The record does not show undue delay. Make Liberty Win learned in late June 2020 that it wanted to make expenditures in the August primary. Great America did not decide to participate until mid-July 2020. Shortly thereafter, Plaintiffs filed this lawsuit on July 22, 2020. Moreover, even if there was a delay, the apparent restriction on Plaintiffs' First Amendment rights constitutes irreparable harm.

### 3. The Balance of Interests Supports Injunctive Relief.

As discussed above, the formation deadline appears to deprive Plaintiffs of their constitutional rights to free speech and association. The interests alleged by Defendants in enforcing the formation deadline are outweighed by Plaintiffs' First Amendment rights. This factor also weighs in favor of injunctive relief.

### 4. The Public Interest Supports Injunctive Relief.

Finally, there is a strong and compelling interest in protecting First Amendment rights of political speech and association. *See Klahr*, 892 F.3d at 948 (recognizing that "political speech is an essential mechanism of democracy") (citations and quotations omitted). Conversely, to the extent the formation deadline is unconstitutional, "[t]he public has no interest in enforcing an unconstitutional ordinance." *KH Outdoor*, 458 F.3d at 1272. The public interest also supports Plaintiffs' request for injunctive relief.

10

Case 2:20-cv-04128-SRB   Document 29   Filed 08/12/20   Page 10 of 12

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. #2) is GRANTED.

It is ORDERED that this Court hereby enters a Preliminary Injunction enjoining Defendants from enforcing the:

- Continuing Committee Deadline, Mo. Const. art. VIII, § 23, cl. 7(6)(c); Mo. Rev. Stat. § 130.011(10);

- PAC Deadline, Mo. Const. art. VIII, § 23, cl. 7(20); and

- Non-Domiciliary/Out-of-State Committee Registration Deadline, 1 C.S.R. 50-5.020(4)(C).

It is FURTHER ORDERED that Defendants shall not conduct any investigation, initiate any administrative or other proceedings, make any criminal referral, impose any fine or other sanction, or otherwise attempt to enforce the provisions identified above against Plaintiffs or any other people, groups, or entities, for:

- violating or attempting to violate any of the provisions listed above;

- filing a statement of organization less than 60 days before an election in connection with which that entity receives contributions or makes expenditures;

- receiving contributions or making expenditures in connection with an election despite having filed a statement of organization less than 60 days before that election.

It is FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order shall apply to the above-captioned named Defendants; their officers, agents, employees, and attorneys; and all other persons acting in active concert with them.

It is FURTHER ORDERED that Defendants shall post prominent public notice of this

11

Order on the official Missouri Ethics Commission website.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 12, 2020