IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MAKE LIBERTY WIN, *et al.*, ) <br> ) <br>    Plaintiffs, ) <br> ) <br>  v. ) <br> ) <br> ELIZABETH L. ZIEGLER, in her official ) <br> capacity as Executive Director of the Missouri ) <br> Ethics Commission, *et al.*, ) <br> ) <br>    Defendants. ) | Case No. 20-cv-04128-SRB |

## ORDER

Before the Court is Plaintiff Make Liberty Win ("Make Liberty Win"), Make Liberty Win-Federal Committee ("Make Liberty Win-Federal"), and Great America PAC's ("Great America") (collectively, "Plaintiffs") Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction. (Doc. #33.) For the reasons set forth below, the motion is GRANTED.

### I. FACTUAL BACKGROUND

The facts of this case are largely undisputed by the parties, and the following facts are deemed to be uncontroverted by the Court.[1] Make Liberty Win is a federal political committee domiciled in Virginia. In June 2020, Make Liberty Win decided to make expenditures in support of certain candidates running in the August 4, 2020, primary election for the Missouri House of Representatives and the Missouri Senate (the "August primary").

Under Missouri law, a federal political committee such as Make Liberty Win is classified as a committee domiciled outside of Missouri and as an out-of-state committee. 1 C.S.R. §§ 50-

---

[1] All page numbers cited herein refer to the pagination automatically generated by CM/ECF.

5.010(1)(A), 50-5.010(1)(F). Any committee domiciled outside of Missouri and any out-of-state committee that wants to expend more than $1,500 for a Missouri election must register as a Missouri continuing committee and as a state political action committee ("PAC"). 1 C.S.R. § 50-5.020(2); *see also* Mo. Const. art. VIII, § 23, cl. 7(6)(c); Mo. Rev. Stat. § 130.011(10).[2]

Pursuant to these provisions, and on June 30, 2020, Make Liberty Win filed a Statement of Organization with the Missouri Ethics Commission (the "Commission") to establish a Missouri state continuing committee and PAC known as Make Liberty Win-Federal. Great America is also a federal PAC and it is domiciled in Virginia. In mid-July 2020, Great America decided that it also wanted to make expenditures in support of candidates running in the August primary.[3]

However, Plaintiffs learned that their desired expenditures were prohibited by Missouri law. In particular, the Missouri Constitution provides that a continuing committee "shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures[.]" Mo. Const. art. VIII, § 23, cl. 7(6)(c). This deadline is also found in Missouri Revised Statute § 130.011(10). A state PAC similarly "shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures." Mo. Const. art. VIII, § 23, cl. 7(20). Finally, Missouri regulations provide that committees domiciled outside of Missouri and out-of-state committees that make more than $1,500 in expenditures must establish a continuing committee or state PAC "no later than sixty (60) days prior to the election for which the committee receives contributions or make

---

[2] A "continuing committee" is "a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters[.]" Mo. Const. art. VIII, § 23, cl. 7(6)(c); Mo. Rev. Stat. § 130.011(10). A PAC is one type of continuing committee. Mo. Const. art. VIII, § 23, cl. 7(20).

[3] Great America has not filed registration paperwork with the Commission.

2

expenditures, and prior to making a contribution or expenditure in the State of Missouri." 1 C.S.R. § 50-5.020(4)(C). These 60-day formation deadlines are the subject of this lawsuit and are collectively referred to herein as the "formation deadlines."

An entity that makes expenditures in violation of the formation deadlines is subject to adverse consequences. Those consequences include administrative proceedings, civil penalties, fees, and a referral for prosecution. *See* Mo. Const. art. VIII, § 23, cl. 5; Mo. Const. art. VIII, § 23, cl. 6(1); Mo. Rev. Stat. §§ 105.961.4(6), 105.961.5; Mo. Rev. Stat. § 130.081.1-2; Mo. Rev. Stat. § 130.072. Plaintiffs have submitted declarations which state that alleged violations can also result in public embarrassment.

Because Make Liberty Win and Make Liberty Win-Federal decided less than 60 days before the August 4 primary to make expenditures, they were initially deterred for several days from funding their political speech. Nonetheless, Make Liberty Win decided to move forward. On July 9, 2020, Make Liberty Win transferred $275,000 to Make Liberty Win-Federal to cover the cost of canvassing efforts and for the production of literature through the August primary. Despite registering less than 60 days before the August primary, Make Liberty Win-Federal has timely filed all required disclosure reports with the Commission. Make Liberty Win-Federal's expenditures are thus available for public scrutiny.

Because it could not comply with the formation deadlines, Great America decided not to form a Missouri political committee through which it could fund expenditures in the August primary. Although the August primary has passed, the formation deadlines will chill or prevent Plaintiffs from making expenditures in future elections.

On July 22, 2020, Plaintiffs filed this lawsuit and allege that the formation deadlines are unconstitutional. Defendants are individuals sued in their official capacity as Executive Director,

Chair, Vice-Chair, and Commissioners of the Commission. The Verified Complaint asserts the following claims "by All Plaintiffs Against All Defendants:" First and Fourteenth Amendment Facial and As-Applied Challenge Under 42 U.S.C. § 1983 to the Continuing Committee Deadline (Counts I, II); First and Fourteenth Amendment Facial and As-Applied Challenge Under § 1983 to the PAC deadline (Counts III, IV); and First and Fourteenth Amendment Facial and As-Applied Challenge Under § 1983 to the Non-Domiciliary/Out-of-State Committee Registration Deadline (Counts V, VI). (Doc. #1, ¶¶ 80-141.)[4]

On July 22, 2020, Plaintiffs also filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. #2.) On August 12, 2020, and following a hearing, the Court granted Plaintiffs' motion for a preliminary injunction. (Doc. #29.) In relevant part, the Court found that the formation deadlines in this case were "materially indistinguishable" from those struck down in *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944 (8th Cir. 2018). (Doc. #29, pp. 6-9.)

Plaintiffs now move for summary judgment under Federal Rule of Civil Procedure 56. Based on the applicable facts and law, Plaintiffs request a declaration that the formation deadlines are unconstitutional under the First and Fourteenth Amendments. *See* Fed. R. Civ. P. 57. Plaintiffs further request a statewide permanent injunction that would prohibit Defendants from enforcing the formation deadlines. Defendants oppose the motion and have filed a cross-motion for summary judgment.[5] The parties' arguments are addressed below.

---

[4] The parties' briefs do not meaningfully distinguish Plaintiffs' facial and as-applied claims. As set forth below, the Court finds that the formation deadlines were and are unconstitutional as applied to Plaintiffs. The Court further finds that Plaintiffs are entitled to summary judgment on their facial challenges because "there is a realistic danger that the [formation deadlines] will significantly compromise recognized First Amendment protections of parties not before the court." *Willson v. City of Bel-Nor*, 924 F.3d 995, 1002 (8th Cir. 2019).

[5] The cross-motions for summary judgment raise similar facts and arguments. The Court has reviewed all briefs and exhibits pertaining to the cross-motions, and the rulings herein dispose of both motions.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotations and alterations omitted). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted).

## III. DISCUSSION

### A. Plaintiffs Have Standing and their Claims are Not Moot.

The Court first addresses threshold issues of standing and mootness.[6] Plaintiffs argue they have standing, and that their claims are not moot, because the formation deadlines have and will continue to infringe their constitutional rights in future elections.[7] Make Liberty Win and Make Liberty Win-Federal also contend that—until the applicable statute of limitations expires—they are subject to penalties for their expenditures in the August primary. Defendants argue this case is moot because Plaintiffs have not shown they suffered harm related to the

---

[6] The parties appear to conflate the similar, yet distinct, issues of standing and mootness. *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) ("Mootness is akin to the doctrine of standing because the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (quotations omitted). Plaintiffs argue that their request for injunctive relief is "justiciable," and cite case law relating to both standing and mootness. (Doc. #34, pp. 11-13.) Defendants argue that at least some claims are moot. Defendants raise similar arguments with respect to irreparable harm, which is separately discussed below.

[7] Because of the ongoing costs and administrative burdens associated with maintaining a Missouri political committee, Make Liberty Win is likely to dissolve Make Liberty Win-Federal after the 2020 general election. (Doc. #34, p. 12.) At that point, Make Liberty Win would again be subject to the formation deadlines.

5

August primary, or that they face any adverse consequences in the future. (*See* Doc. #38, p. 14.) As explained below, the Court agrees with Plaintiffs.

"Article III restricts federal courts to the resolution of cases and controversies." *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018) (citations and quotations omitted). "Therefore, any person invoking the power of a federal court must demonstrate standing to do so," and standing must "persist throughout all stages of litigation." *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019). To establish standing, a plaintiff "must have suffered an injury in fact, meaning an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations, quotations, and ellipsis omitted). When, as here, a plaintiff seeks "declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, the plaintiff must show he is suffering an ongoing injury or faces an immediate threat of injury." *Id.* at 1162 (citations, quotations, and alteration omitted).

Here, Plaintiffs have shown they have standing to pursue this case. Plaintiffs filed this case before the August primary, and alleged that their First Amendment rights were being prohibited or chilled. Although the August primary is complete, the expenditures made by Make Liberty Win and Make Liberty Win-Federal subject them to referral for criminal prosecution, financial sanctions, and administrative proceedings. In future elections, Plaintiffs' constitutional rights will again be prohibited or chilled if they are unable to meet the formation deadlines. Plaintiffs thus have standing to pursue their claims in this case.

Plaintiffs' claims are also not moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Abdurrahman*, 903 F.3d

at 817. However, there is an "exception that allows a federal court to consider an otherwise moot case if it is capable of repetition, yet evading review." *Id.* (citations and quotations omitted). A plaintiff invoking this exception must show "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (citations and quotations omitted).

Defendant argues that any claims relating to the August primary are moot because it has already passed and because Plaintiffs have failed to show they have or will face any adverse consequences. This argument is rejected because Plaintiffs have shown that the constitutional issues presented herein are capable of repetition in future elections. Further, because such disputes would likely arise within 60 days of an election, there would not be enough time to complete litigation. Under these circumstances, this case is not moot because Plaintiffs' claims are "capable of repetition, yet evading review." *Abdurrahman*, 903 F.3d at 817.

### B. Plaintiffs Are Entitled to a Permanent Injunction.

To obtain a permanent injunction, "the moving party [must] show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Id.* Each factor is addressed below.

### 1. Plaintiffs Have Shown Actual Success on the Merits.

Under 42 U.S.C. § 1983, a state actor may be sued for violating an individual's constitutional rights. *See* 42 U.S.C. § 1983. The First Amendment, applicable to states through the Fourteenth Amendment, "protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *Republican Party of Minn. v. White*, 416 F.3d 738, 748 (8th Cir. 2005). This protection includes the "right to participate in democracy through political contributions." *McCutcheon v. Fed. Elec. Comm'n*, 572 U.S. 185, 191 (2014). "Independent expenditures are indisputably political speech, and any restrictions on those expenditures strike at the core of our electoral process and of the First Amendment freedoms." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (citations and quotations omitted). "Laws that burden political speech are subject to strict scrutiny[.]" *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 340 (2010) (quotations omitted). To withstand strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* (citations and quotations omitted).

Here, Plaintiffs allege that the formation deadlines burden their First and Fourteenth Amendment rights. This is not the first constitutional challenge to Missouri's formation deadlines. In *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944 (8th Cir. 2018), the Eighth Circuit struck down a similar Missouri statute. The statute in *Klahr* provided that "'campaign committees . . . formed by an individual or group of individuals to receive contributions or make expenditures . . . to support or oppose . . . one or more particular ballot measures in an election . . . shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures[.]'" *Id.* at 947 (quoting Mo. Rev. Stat. § 130.011(8)).

*Klahr* found that this 30-day formation deadline burdened and restricted speech. *Id.* at 950. "[T]he formation deadline *prohibits* formation—the precondition to speak—within 30 days of the election. Thus, the formation deadline . . . prohibits speech even if the individual or group is willing to register, report information, keep necessary records, and take organizational steps." *Id.* *Klahr* further recognized that Missouri law imposed "a significant burden," including fees, for the exercise of First Amendment rights in violation of the 30-day deadline. *Id.* at 951.

Because of these burdens and restrictions on speech, *Klahr* determined that the 30-day deadline was subject to strict scrutiny. *Klahr*, 892 F.3d at 948-952. Applying strict scrutiny, *Klahr* then held that the 30-day formation deadline was "unconstitutional because it is not narrowly tailored." *Id.* at 952. The Eighth Circuit explained that:

> The formation deadline indiscriminately prohibits (or significantly burdens) speech by individuals or groups who did not form a campaign committee by the 30-day deadline. This would be less burdensome if all individuals and groups knew well in advance that they would eventually want to speak. But as the Supreme Court has recognized, this is not the case: '[T]he public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence. The need or relevance of the speech will often first be apparent at this stage in the campaign. The decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others.'

*Id.* at 952 (quoting *Citizens United*, 558 U.S. at 334). These timing concerns were particularly relevant because "[i]n Missouri, individuals may not learn of ballot measures until days before the election." *Id.* *Klahr* thus affirmed summary judgment in favor of the political organization, concluding that "[d]ue to its burden on speech and its modest effect on preventing circumvention of the disclosure regime, the formation deadline is not narrowly tailored." *Id.* at 953. As explained below, the Court again finds that the formation deadlines in this case are materially indistinguishable from the statute struck down in *Klahr*.

9

As recognized by *Klahr*, the formation deadlines burden political speech and are thus subject to strict scrutiny. *See Klahr*, 892 F.3d at 950. Under strict scrutiny, Defendants must "show that its law is narrowly tailored to serve a compelling interest." *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019). For purposes of resolving the pending motion, the Court assumes that Defendants have shown "compelling interests in reducing the possibility of candidate-PAC coordination, minimizing corruption, and ensuring some measure of pre-election disclosures for all PACs." (Doc. #38, p. 16; Doc. #43, p. 17); *see also Klahr*, 892 F.3d at 952 (assuming without deciding that the Commission presented a compelling interest).[8]

The constitutionality of the formation deadlines thus turns on whether Defendants have shown that the formation deadlines are "narrowly tailored" to serve those interests. *Citizens United*, 558 U.S. at 340 (quotations omitted). Defendant contend there "are important reasons why the formation of PACs should be required in advance of an election." (Doc. #38, p. 17.) In part, Defendants explain that:

> While an individual candidate is prohibited from actually coordinating with a PAC, in the case of a late-forming PAC, there is no real way for the Commission to know whether coordination might be occurring. The Commission cannot know when that money was raised, whether it was being properly segregated from other funds, or whether the account is the same account as one disclosed on a candidate's own committee formation and thus violating the prohibition on coordination. A 60-day formation period mitigates against improper candidate-PAC coordination. There is another likely consequence of striking Missouri's PAC formation deadline. Sophisticated political actors may structure their PACs and activities such that they might make expenditures in the days before an election but nevertheless not be required to publicly file registration and expenditure reports until *after* the election due to the deadlines in § 130.046.1, RSMo. In that situation, a voter might receive a piece of literature containing standard 'Paid for by' language; though that literature may state the name of the PAC, the PAC may not have any filing with the Commission to enable the voter to

---

[8] With respect to a compelling state interest, Defendants contend there are important distinctions between the "campaign committees" in *Klahr*, which are formed for "ballot measures," and the committees in this case, which are formed to support or oppose particular candidates. According to Defendants, the risk of corruption in candidate elections are greater than those involving ballot measures. (Doc. #38, pp. 16-17; Doc. #43, pp. 15-18.)

>     research who the entity is . . . . The formation deadline is a narrowly tailored
>     way of achieving these interests.

(Doc. #43, pp. 16-17; *see also* Doc. #38, pp. 17-18.)

Upon review of the record, the Court finds that the 60-day deadline is arbitrary and not narrowly-tailored. Defendants fail to adequately explain why a shorter time frame would not address their concerns, do not cite any evidence in support of a 60-day deadline, and only offer general arguments. *Klahr* found that a 30 day deadline was not narrowly tailored, and Defendants do not provide a basis for upholding a 60-day deadline.

Conversely, Plaintiffs have shown that a 60-day deadline is not narrowly tailored and burdensome. In particular, Plaintiffs explain that they have and will timely comply with all other provisions of Missouri law, including disclosure requirements for contributions and expenditures. Additionally, *Klahr* and other cases have recognized that entities may not have a desire to speak until days before an election. *Klahr*, 892 F.3d at 952; *Nat'l Right to Life PAC v. Connor*, 323 F.3d 684, 692 (8th Cir. 2003) (recognizing that "polls might reveal a closer race than expected and attract . . . resources" and that "[t]rends in other races could elevate the importance of races with less clear outcomes"). Under these circumstances, "[d]ue to its burden on speech and its modest effect on preventing circumvention of the disclosure regime, the formation deadline is not narrowly tailored." *Klahr*, 892 F.3d at 953. Plaintiffs have therefore shown actual success on the merits.

**2. Plaintiffs Have Shown Irreparable Harm.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (citations and quotations omitted). Here, the formation deadlines caused Make Liberty Win and Make Liberty Win-Federal to delay their political speech in the August

11

primary.  Great America decided against making expenditures to avoid penalties.  Although the August primary has passed, Plaintiffs have shown a likelihood that the formation deadlines will infringe their constitutional rights in future elections.  *See St. Paul Area Chamber of Comm. v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006) ("When a party brings a pre-enforcement challenge to a statute that provides for criminal penalties and claims that the statute chills the exercising of its right to free expression, the chilling effect alone may constitute injury.").  Under these facts, the formation deadline has and likely will cause irreparable harm to Plaintiffs.

Defendants contend that Plaintiffs have failed to show they have faced or will realistically face complaints, fines, or prosecution.  (Doc. #43, pp. 14-15.)  Defendants further state they have not taken any action to impede Plaintiffs' political speech in advance of the August primary or in the November 2020 general election.  However, Defendants do not affirmatively represent that they will not enforce the formation deadlines against Plaintiffs or other entities.  Even if Defendants had made such a statement, "[t]his court does not expect individuals or groups to rely on [the Commission's] informal assurance that it would not enforce the plain meaning of the statute." *Klahr*, 892 F.3d at 951; *see also Gaertner*, 439 F.3d at 486 (quoting case law recognizing that "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence").

Defendants argue they will suffer irreparable harm if enjoined from enforcing state law, particularly before the November 2020 election.  However, any concerns about the November 2020 election are no longer applicable because it has passed.  Defendants also rely on *Purcell v. Gonzalez*, 549 U.S. 1 (2006) for the proposition that courts should not alter election rules close to an election.  (Doc. #43, pp. 12-13.)  But *Purcell* and its progeny relate to the actual voting process (e.g., absentee voter laws, restoration of voting rights) and related election administration

issues, not to campaign finance.  (*See* Doc. #45, Plaintiffs' Reply ("Every case in which the Supreme Court or the Eighth Circuit have cited or applied *Purcell*'s limitations on injunctive relief has involved the rules governing the electoral process (*i.e.*, voting procedures and related election administration issues), ***never campaign finance***.")  (emphasis in original)).  For these reasons, the irreparable harm factor supports a permanent injunction.

### 3. The Balance of Harms Weighs in Favor of a Permanent Injunction.

As set forth above, the formation deadlines violate Plaintiffs' constitutional rights to free speech and association.  The protection of these rights outweighs Defendants' interests in enforcing the constitutionally infirm formation deadlines.  The balance of harms factor supports a permanent injunction.

### 4. A Permanent Injunction is in the Public Interest.

The pubic has a compelling interest in protecting First Amendment rights of political speech and association.  *See Klahr*, 892 F.3d at 948 (recognizing that "political speech is an essential mechanism of democracy") (citations and quotations omitted).  Conversely, the formation deadlines are unconstitutional and "[t]he public has no interest in enforcing an unconstitutional ordinance."  *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).  The public interest factor also weighs in favor of permanent injunctive relief.

Finally, Plaintiffs contend that a permanent injunction should be issued statewide.  Defendants respond that Plaintiffs have failed to show "why it would be impractical to tailor any relief just to themselves."  (Doc. #43, p. 20.)  For the reasons discussed above, the Court finds that Plaintiffs have shown a violation of their constitutional rights, and that those violations would be suffered by other political committees formed within 60 days of an election.  Because the constitutional violations in this case are not based on facts unique to Plaintiffs, a statewide

permanent injunction is warranted. *Rogers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (holding that "injunctive relief should extend statewide because the violation established—the plain unconstitutionality of Arkansas's anti-loitering law—impacts the entire state of Arkansas").

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction (Doc. #33) is GRANTED. It is hereby ORDERED that:

1) the following provisions of Missouri law and regulations are declared to be facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution:

> (a) Continuing Committee Deadline, Mo. Const. art. VIII, § 23, cl. 7(6)(c); Mo. Rev. Stat. § 130.011(10);
>
> (b) PAC Deadline, Mo. Const. art. VIII, § 23, cl. 7(20); and
>
> (c) Non-Domiciliary/Out-of-State Committee Registration Deadline, 1 C.S.R. § 50-5.020(4)(C); and

2) a statewide permanent injunction is hereby entered prohibiting Defendants from enforcing the following provisions of Missouri law and regulations:

> (a) Continuing Committee Deadline, Mo. Const. art. VIII, § 23, cl. 7(6)(c); Mo. Rev. Stat. § 130.011(10);
>
> (b) PAC Deadline, Mo. Const. art. VIII, § 23, cl. 7(20); and
>
> (c) Non-Domiciliary/Out-of-State Committee Registration Deadline, 1 C.S.R. § 50-5.020(4)(C); and

It is FURTHER ORDERED that Defendants shall not conduct any investigation, initiate any administrative or other proceedings, make any criminal referral, impose any fine or other sanction, or otherwise attempt to enforce the provisions identified above against Plaintiffs or any other people, groups, or entities, for:

- violating or attempting to violate any of the provisions listed above;

- filing a statement of organization less than 60 days before an election in connection with which that entity receives contributions or makes expenditures;

- receiving contributions or making expenditures in connection with an election despite having filed a statement of organization less than 60 days before that election.

It is FURTHER ORDERED that Defendants shall post prominent public notice of this Order on the official Missouri Ethics Commission website.

It is FURTHER ORDERED that Defendants' cross Motion for Summary Judgment (Doc. #37) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 4, 2020